ALEXANDER HUNT, PLAINTIFF IN ERROR, VS. BRIGADIER GENERAL FINEGAN, DEFENDANT.

A County Commissioner is exempted under the act of Congress of October 11th, 1862, which enacts, " *that the officers, judicial and executive, of the State governments* shall be exempted from military service," notwithstanding he was not such officer at the time of his enrolment, but was elected and qualified afterwards.

This case was decided at Tallahassee.

The petitioner alleged that he was held in custody in the military service of the Confederate States by Brigadier General Joseph Finegan, commanding the military district of Florida, as a conscript; that he had been elected, commissioned and qualified as a County Commissioner of the county of Columbia, in the State of Florida, and that, by virtue thereof, he was entitled to his discharge from the army.

The petition was filed on the 1st December, A. D. 1863. The commission of said applicant, which is in evidence, is dated the 30th day of October, A. D. 1863, and recites that, " whereas Alexander Hunt hath been duly elected, according to the Constitution and laws of this State, to be County Commissioner for the county of Columbia, for two years from the 5th day of October, 1863 ;" and it appears that he accepted and qualified on the 28th day of November, A. D. 1863. This being the evidence in the case, the court below made the following order :

" This was an application for discharge from military service of the Confederate States, upon the ground that the party had been elected one of the County Commissioners for Columbia county. The proof before me was that he had been regularly enrolled and in the service of the Confederate States, by virtue of the act of 16th April, 1862; that subse-

14

quent to his enrollment he was elected one of the County Commissioners for the county of Columbia.

"I am of the opinion that, being in the military service, an election to the office of County Commissioner would not release him from that service. I am confirmed in this view from the subsequent legislation of Congress of the 2d April, 1863. It is therefore ordered that he be remanded to the military authorities."

From this order a writ of error is issued.

*Smith & Ives, Banks & McLeod* for Plaintiff.

*L. J. Fleming* for Defendant.

FORWARD, J., delivered the opinion of the court.

On the part of the plaintiff, it is insisted that the court erred in not discharging him, because he was exempted by and under the exemptions made in the act of Congress of October 11th, 1862, which enacts, " that *the officers, judicial and executive, of the Confederate and State governments*," shall be exempted.

The counsel for the defendant contends that as said plaintiff was, at the time of his election and qualification, regularly in the military service of the Confederate States, he could not be relieved from this service excepting by some Confederate law or authority.

2d. That the exemption act of April 21, 1862, does not relieve him; for, by the case before the court, the party seeking the discharge was regularly in the Confederate service previous to his election as commissioner, and were this otherwise, a County Commissioner cannot be considered a judicial officer.

There are but two questions in this case:

First. Whether the applicant was, at the time of his election, eligible to election as County Commissioner, he being at the time in the military service as a conscript?

Hunt vs. Finegan—Opinion of Court.

Secondly. Whether the office of County Commissioner in this State, is a judicial and executive office of the State, and as such embraced within the exemption and entitled to his discharge without any further act of Congress authorizing it?

In considering these two grave questions, we are to turn to the Constitution and laws of the State, and see whether there is anything prohibiting the election of a private soldier, enrolled in the said service, from being elected and qualified to the office of County Commissioner?

We have given thorough examination and are unable to find any provision of the Constitution, or any act of the Legislature, disqualifying such persons, being citizens of the State, from election, and therefore we are to conclude that, in October, A. D. 1863, the appellee, notwithstanding he was then in the service as a soldier, was legally elected to fill said office, and was duly qualified.

This brings us to the remaining question, and before entering upon it, we are to consider the division of the powers of the government and inquire who are State officers. Officers of the State government may be classed into executive officers, legislative, judicial officers and ministerial officers, and these are required to exercise the functions belonging to their respective offices, and any neglect to do so may subject the offender to an indictment or he will be liable to the party injured or subject to impeachment.

There are private offices, such as Bailiff, Receiver and the like. The body or person who carries the laws into effect, or superintends the enforcement of them, is executive. Administerial, like ministerial, pertains to the executive part of government as distinct from judicial.

With this understanding of the classes of officers, we proceed to inquire what are the powers and duties of the Board of County Commissioners, and of course of the individual members thereof? We find it an office authorized or created

by the Constitution of the State, and which office was in being at the time of the enacting of said act of Congress known as the " exemption act." The Constitution authorizes the establishment of a Board of Commissioners in each county "for the regulation of county business therein." See article 5, section 19. The Legislature in 1845, under this provision of the Constitution, created a Board of County Commissioners in each county, and declared that they should exercise all the powers and perform all the duties which had before appertained to the county courts, when sitting for county purposes. They were required to hold regular terms, and they are to be regularly commissioned and qualified. See Thomp. Digest, 127. The Judge of Probate was made President ex-officio of said Board, and required to keep a regular record of its proceedings at each session; they are allowed mileage and a per diem; they are required to approve of certain bonds; they are required to appoint a county Treasurer; the Sheriff is required to execute all their processes and to attend their meetings; they have authority to punish contempts by fine or imprisonment, (see laws of 1847;) there is an appeal from their court to the Circuit Court; they are empowered to levy county tax, and are required to make out annual statement of all money collected for county tax, &c.; they are empowered to levy taxes for the clothing of the soldiers in the Confederate service; they are to canvass the vote when soldiers vote at elections; they value and assess taxes on property; they expend the money appropriated to aid the families of soldiers; they hold their office until successors are commissioned and qualified—(see acts of 1848, page 71;) they examine and correct assessment books; they are common school commissioners; they have the protection of bridges, and extend charters to bridges and ferries. The duties prescribed are imposed upon the Board, and not as individuals—as a Board they act; thus they *cannot act by deputy.* They are similar to the Court of Quarter

Hunt vs. Finegan—Opinion of Court.

Sessions in England ; the only qualification is that fixed in their oath of office, and their removal can only be by address of the General Assembly.

The rule of law respecting such officers is, that an officer, entrusted by the common law or statute is liable to an action for negligence in the performance of his trust or duty, or for fraud or neglect in the execution of his office. 3 Blackstone's Com., 123 ; Bartlet vs. Crozier, 15 Johnson, 250.

Such being the importance of the office, they must be supposed to be always filled with those who are most able to execute them. If they are not exempted by the act of Congress, how can the office be filled ? The Judge of Probate cannot order an election to fill a vacancy unless there is one, and we have already held that a citizen, a private soldier in the army, is eligible to the office. So that we see, that instead of the State's breaking up the army by electing soldiers to fill office, the effect will be, if they are not allowed to attend to their duties, the State organization will be broken up by the military.

There are general principles settled by our courts which serve to aid us in arriving at the *status* of these commissioners. In the case of Hawkins vs. Robinson, 5 J. J. Marshall, page 8, that court held, that in the establishment and alteration of public roads, the county court act *judicially,* because they act on the facts adduced in evidence.

In the case of the State vs. Connor, 5 Blackford, 325, the court in Indiana held that in that State the Board of County Commissioners is a court of record, and its acts consequently can be proved only by the record.

In the case of Washington county vs. Partier, 5 Gilman, 232, it was held that the County Commissioners acted as *executive* officers in making settlements with collectors of the revenue.

In Rhode vs. Davis, 2 Carter, (Ind.) 515, it was held that

Boards of County Commissioners are courts of limited and special jurisdiction.

With such an array of authorities as a guide, we are supported in the conclusion that in view of the duties which have been placed upon the Board of County Commissioners by our Legislature, that in the proper discharge thereof, they are legislative, executive and judicial officers.

*First.* The following duties necessarily make them a legislative body within the county, viz :

Establishment of ferries; extension of charters to bridges and ferries; establishing and regulating patrols; providing for the maintenance and support of the poor and infirm; levying a tax in support of common schools; levying county taxes; levying taxes for the clothing of soldiers.

*Second.* The following duties necessarily make them an executive body; for, although administrative, yet they pertain to the executive as distinct from judicial, viz :

Appointing County Treasurer; approving bonds, &c.; selling and disposing of lands; appointing overseers and surveyors of roads; examining assessment books; examining tax collectors' accounts; canvassing the votes when soldiers vote at elections; expending the money appropriated to aid the families of soldiers.

*Third.* They act *judicially* in the exercise of the following powers, viz :

In establishing and altering public roads, because in those cases they act on the *evidence* adduced in the report of the viewers; in the valuation of property for assessment of taxes, because they herein act on the evidence; in the issuing of writs *ad quod damnum*; in the exercise of the power to punish for contempts by fine or imprisonment; in the fact that they are required to keep record, and appeals are authorized on the record; in the fact that they can only be removed by impeachment.

Having thus defined the true character of these commis-

Russ vs. Mitchell—Opinion of Court.

sioners, the importance of their office in the functions of the State government will be seen at a glance, and we can come to no other conclusion than that they are "officers, judicial and executive, of the State government." We are next to consider whether, as the plaintiff in error was not a County Commissioner when the act known as the exemption act of October 11, 1862, was passed, he is exempted under the provisions of that act? We think he was, so soon as he was commissioned and qualified.

The act does not, as in the cases of physicians and ministers of the gospel, limit the time of its operation to those who were or should be in office at the time of the passage of the act, or at any other stated period, but is general in its provisions.

In consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be and the same is hereby reversed, each party to pay their own costs, and that the said Alexander Hunt be discharged.

DuPONT, Chief Justice, dissenting.